THE PEOPLE OF THE STATE OF NEW YORK ex re'. CLARENCE W. BARRON, as President of DOW, JONES AND COMPANY, an Unincorporated Joint Stock Association, Respondent, *v.* WALTER H. KNAPP and Others, Constituting the State Tax Commission of the State of New York, Appellants.

THE CITY OF NEW YORK (Intervenor), Appellant.

First Department, February 8, 1924.

**Taxation — special franchise — association engaged in gathering and distributing news — use of leased wires of telephone company with no grant from city or State to use streets or lands, is not special franchise under Tax Law, § 2, subd. 6 — special franchise rights are only those exercised in connection with ownership of tangible property.**

An unincorporated joint stock association engaged in the business of gathering and distributing financial news to selected subscribers, using leased wires of a telephone company, and having no grant from the city of New York or the State authorizing it to use the streets or lands of the city or State, has not a special franchise under subdivision 6 of section 2 of the Tax Law, because of using said wires and the appurtenances thereto.

Special franchise rights are only those exercised in connection with the ownership of tangible property.

APPEAL by the defendants, Walter H. Knapp and others, and by the intervenor, The City of New York, from a final order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 23d day of August, 1920, as resettled by an order entered in said clerk's office on the 23d day of September, 1920, granting relator's motion to vacate and cancel special franchise assessments against the relator, and denying the defendants' and the intervenor's motion for a final order dismissing a writ of certiorari and confirming the assessments.

*Carl Sherman, Attorney-General [John M. Farrell* of counsel], for the appellant.

*Emmet, Marvin & Roosevelt [Langdon P. Marvin* of counsel; *George W. Martin* with him on the brief], for the respondent.

*George P. Nicholson, Corporation Counsel [William H. King* of counsel; *Eugene Fay* with him on the brief], for the intervenor, appellant.

McAvoy, J.:

The relator brought this proceeding to review the assessment made by the State Tax Commission of a special franchise said to

be the property of the relator which was laid against it for the year 1919. The court at Special Term vacated and canceled the assessment on the ground that the relator had no special franchise upon which such an assessment could be imposed and a special franchise tax collected. The ground upon which the court below based its decision was that no " special franchise " can exist apart from the ownership of the tangible property in the public domain by, through or over which the owner exercises the grant to operate the franchise.

The relator does not own the means whereby its service is communicated to its subscribers. It is an unincorporated joint stock association engaged in the business of gathering and distributing to subscribers financial news. It collects news from various sources, including agents, reporters and correspondents, and sends the news out by three methods:

(1) A financial newspaper, published daily, morning and afternoon, known as the *Wall Street Journal;*

(2) By a bulletin service containing the news in short form which is distributed by messengers;

(3) By a news ticker service which conveys by telegraph the news to the offices of the subscribers.

The relator has never had any written express grant, license, authority or permission from the city of New York or the State, or any contract with either or with any of the departments of government, local or State, authorizing it to use the streets or highways of the city to construct, maintain or operate wires, or in any other respect to utilize the streets or lands of this State or city for its purposes. It transmits its news through the tickers by the use of telephone wires owned by the New York Telephone Company, the telephone company furnishing and maintaining under a contract with relator 104 lines connecting relator's offices with buildings in which are the offices of its subscribers for a monthly sum fixed as the charge for each line. There are provisions in the contract for additional lines, for discontinuance of lines where the telephone company deems the use of the line detrimental to its own service, or injurious to its interests, and there is a provision for the termination of the contract by either party upon ten days' notice to the other.

The relator receives its power from the Edison Electric Company, transforms it in order to comply with the provisions of its contract with the telephone company, and transmits it to the tickers over these telephone wires, and for the year for which the assessment was laid the number of lines so leased was 132 and the rental paid therefor was $339 per month. The tele-

phone company maintains and repairs all the wire circuits. The relator owns no wires or other tangible property in or under the streets and all instruments of transmission and receipt of the news items necessary for the operation of the tickers is installed inside buildings privately owned.

The wires under the streets owned by the telephone company and used by relator are not under its control. The relator does not hold itself out as extending a ticker service to any who may apply, but discriminates in selecting customers and rejects any applicants who are not conducting a legitimate business and has a restricted class of customers who pay the sum of $600 per year for each ticker.

The State Tax Commission assessed as a special franchise, owned or operated by the relator, lines, wires, poles, cables, conduits and appurtenances in, upon, above, under or through the streets, highways, public places and public waters, and the State special franchise right, authority or permission to construct, maintain or operate the same described as " property lengthwise in streets " at upwards of $164,000. The tax on this assessment amounts to nearly $3,800 for both the boroughs of Manhattan and Brooklyn.

The court at Special Term found that the New York Telephone Company in its report for the year 1917 to the State Tax Commission for fixing the basis of assessment of a tax on its special franchise for the year 1919, included all of its tangible property in the streets of New York city for lease to others, or operated directly by the telephone company, including the wires leased to the relator, and also the rental received therefrom, and there were no wires owned by the telephone company in the city of New York which were not included in this return. A special franchise tax was duly assessed by the State Tax Commission against the wires and other property under the streets and the special franchise of the New York Telephone Company for the year 1919, and this special franchise tax was paid by the New York Telephone Company. The relator, too, has been assessed and paid a local tax on its news tickers, switchboards, wires and appurtenances and a further tax on leased wires in streets, both in the borough of Manhattan and in the borough of Brooklyn.

The question, therefore, is whether or not the use by the relator in the manner described of the wires owned by the New York Telephone Company and located in conduits under some of the streets of the city of New York constituted the exercise of a special franchise by the relator.

9

We deem it apparent that a special franchise must contain two elements, the element of the physical property in the streets, and the grant from the State of a right to construct, maintain or operate it. If either of these elements, the tangible or intangible, is missing, the other element cannot be a special franchise within the meaning of the law.

The statute, which has remained unaltered since its adoption by the Legislature in 1899, is now subdivision 6 of section 2 of the Tax Law and reads: " The terms ' land,' ' real estate,' and ' real property,' as used in this chapter, include * * * all telegraph lines, wires, poles and appurtenances; all supports and inclosures for electrical conductors and other appurtenances upon, above and under ground; * * * all mains, pipes and tanks laid or placed in, upon, above or under any public or private street or place for conducting * * * electricity or any property, substance or product capable of transportation or conveyance therein or that is protected thereby, including the value of all franchises, rights, authority or permission to construct, maintain or operate, in, under, above, upon, or through, any streets, highways or public places, any * * * conduits or wires, with their appurtenances, for conducting * * * electricity for telegraphic, telephonic or other purposes; * * *. A franchise, right, authority or permission specified in this subdivision shall for the purpose of taxation be known as a ' special franchise.' A special franchise shall be deemed to include the value of the tangible property of a person, copartnership, association or corporation situated in, upon, under or above any street, highway, public place or public waters in connection with the special franchise. The tangible property so included shall be taxed as a part of the special franchise. No property of a municipal corporation shall be subject to a special franchise tax." (See Gen. Laws, chap. 24 [Laws of 1896, chap. 908], § 2, subd. 3, as amd. by Laws of 1899, chap. 712; Consol. Laws, chap. 60 [Laws of 1909, chap. 62], § 2, subd. 3, as renum. subd. 6 and amd. by Laws of 1916, chap. 323.)

The statute seems indubitably to point out the essential integration of the corporeal and incorporeal elements of the special franchise. There cannot be a division under its very terms. The intangible or special franchise shall be deemed to include the value of the tangible property used in connection with the exercise of the privilege. The intent of the Legislature to include a separate tax against a lessee for the use of the physical property is not made manifest by the language of the text and the incidence of the tax cannot be asserted.

The suggestions by the appellant, the State Tax Commission, and

by the intervenor, appellant, the city of New York, that a public service corporation having a special franchise could evade taxation thereon either by selling its tangible property to another corporation and, then taking a lease of such property and continuing to operate it, or by leasing the tangible property to another corporation having a special franchise which would operate it, do not demonstrate that there was power to lay the assessment in this instance. The cases supposed are not examples of a possible successful evasion of the tax, since the tangible property and the intangible right to use it, not being severable, may be taxed in the hands of the owner. In any event, such obvious frauds would be easily frustrated. The franchise to operate being classified as real estate would be taxable as such on y as part of and included with the tangible property. (Tax Law, § 2, subd. 6, *supra.*)

The special franchise tax, therefore, would be assessed against the tangible property itself and the value of the right to operate it whoever the owner might be.

It is further demonstrated, however, that in the present case the relator is not a public service corporation and has no grant of a special right in the highway, and, therefore, no special franchise, while the cases suggested as possible evasions involve lessees acting as publ'c service corporations having such grants and special franchises, and, therefore, no analogy is presented.

The rights taxable as special franchises under the Tax Law are those only which are exercised in connection with the ownership of tangible property, such, for example, as tracks upon or pipes and wires laid under the street.

The only right which the respondent has here is one unconnected with its tangible property, but given solely by a contract to operate its service by means of wires of the telephone company. Such right, it seems to me, does not come within the definition of the subdivision of the quoted section of the Tax Law (§ 2, subd. 6), and the assessment was accordingly improperly laid against relator.

The order should be affirmed, with ten dollars costs and disbursements.

CLARKE, P. J., DOWLING, SMITH and MERRELL, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.